## EXHIBIT 1

20. Once on notice of the problems, Securities America never contacted any customer to find out what was going on and never disciplined McFadden in any way. To undersigned counsel's knowledge, McFadden remains employed today by Securities America without having been subjected to any discipline or special supervision.

Much more of the voluminous evidence presented in this arbitration is summarized in the Plaintiffs' post-hearing brief, which is attached as Exhibit "4." If there is any question as to whether the conduct outlined above was proven, this brief includes record citations and transcript references. Suffice it to say that the evidence of widespread wrongdoing and self-dealing was very substantial.

**D.**


Redacted

Subject to Order to
Seal

Redacted

Subject to Order to
Seal

E.    A Brief Summary of Two Typical Claims.

To give some concreteness to the carnage wrought by Securities America's conduct, it is

instructive to briefly consider two individual cases.  First, consider the claim of Pat Salatich.[18]

Pat was a nurse at Exxon who retired in 2000 at age sixty-six with approximately $565,000.

McFadden advised her that she could safely withdraw $60,000 from her account on an annual

basis, approximately 11 percent annually, but she ultimately decided to take $48,000 per year,

well within the withdraw range he suggested was appropriate.  He sold her an American Skandia

---

[18]    In addition to the general Post-Hearing Brief, the Plaintiffs also filed individual briefs on each of the 32
Plaintiffs.  Ms. Salatich's brief is attached as Exhibit "5."

variable annuity for which he was paid approximately $25,000 in upfront commissions (on $493,000 invested) even though a variable annuity made absolutely no sense for her because her retirement money was already tax deferred. The annuity was burdened with approximately a 2 percent annual expense, which meant that her investments had to generate approximately $10,000 before she made any return at all.

For the investments within the variable annuity, McFadden chose growth equity funds, including large positions in ProFund Ultra OTC, a leveraged fund designed to be twice as risky as the NASDAQ 100 and Rydex Nova, a leveraged fund designed to be one and a half times as risky as the S&P 500. He later day-traded in Profund Ultra and other volatile funds after telling Ms. Salatich that he would be changing his strategy to put a substantial amount of her money in a "safe place."

Ms. Salatich transferred her account to another brokerage in 2003, when she had $73,000 left, about 13 percent of what she started with. Currently, she has less than $2,000 of her savings left and her hopes, like those of many others, hinge on the expeditious resolution of this arbitration.

Or take George Moore as another example.[19] He retired early from his job as a Process Operator from Exxon at age fifty-five on McFadden's advice that McFadden could make Moore more money on his retirement assets than Moore was making at Exxon. "Why are you working," McFadden said. He advised Moore to take $61,395 out of his account annually and told him he would end up with so much money his heirs would be fighting over it. By IRS rule, the $61,395 annual withdrawal was mandatory for five years and could not be reduced after the first year.

---

[19]     Mr. Moore's brief is attached as Exhibit "6."

Moore retired in 2000 with $640,000 and McFadden sold him an American Skandia variable annuity for which McFadden earned about $32,500. The annuity had annual expenses of $15,000, which were deducted from the account before Moore could see any return. Like Salatich, even though he promised safety and diversity, McFadden invested Moore in growth funds with a heavy component of Profunds Ultra OTC. When this strategy did not work, he day-traded in Profunds, again suggesting that this day trading would reduce risk. By 2003, Moore had only approximately $70,000 left, or about 11 percent of what he started with.

Moore had to go back to work, first re-stocking vending machines at Exxon for a fraction of his former salary and then to a series of short term jobs in paper mills in Louisiana, Mississippi and Texas. He has none of his retirement nest egg left now and is also in a state of financial distress until his arbitration award of $814,087 is paid. In both cases, money that McFadden promised would last until death and be passed on to heirs had mostly disappeared within three years.

### Argument

"Arbitration awards are peculiarly insulated from judicial review." *Container Prod., Inc. v. United Steelworkers Local 5651*, 873 F.2d 818, 819 (5th Cir. 1989); *see also Fedmet Corp. v. M/V Buyalyk*, 194 F.3d 674, 676 (5th Cir. 1999); *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987); *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). The scope of such review, when permitted at all, is "extraordinarily narrow." *Weinberg v. Silber*, 2003 WL 147530, at * 2 (5th Cir. Jan. 6, 2003); *see also Forsythe Int'l, S.A. v. Gibbs Oil Co.*, 915 F.2d 1017, 1020 (5th Cir. 1990) (quoting *Antwine v. Prudential-Bache Sec.*, 895 F.2d 410, 413 (5th Cir. 1990)); *Brabham v. A.G. Edwards & Sons Inc.*, 376 F.3d 377, 380 (5th Cir. 2004); *United Paperworks Int'l Union v. Misco, Inc.*, 484 U.S. 29, 37-38 (1987).

"When an arbitration award is at issue, the district court does not sit as an appellate court or a court of review, to decide the merits of the grievance or the correctness of the award." *United Steelworkers of Am. v. Mueller Brass Co.*, 479 F. Supp. 413, 416 (N.D. Miss 1979). Review is "exceedingly deferential," *Brabham*, 376 F.3d at 380, and the burden on the party seeking vacatur is a heavy one. *See O.R. Sec. v. Professional Planning Assoc.*, 857 F.2d 742, 748 (11th Cir. 1988). Thus, a court "will not second-guess the arbitrator's resolution of [a] dispute," *Weinberg v. Silber*, 2003 WL 147530, at *4, and any challenge regarding the merits of an award "must be considered presumptively unjustified." *United Food & Commercial Workers Local 400 v. Marval Poultry Co.*, 876 F.2d 346, 351 (4th Cir. 1989) (citing *International Ass'n of Machinists v. Texas Steel Co.*, 639 F.2d 279, 284 (5th Cir. 1981)). In other words, the FAA "does not provide a system of 'junior varsity trial courts' offering the losing party complete and rigorous *de novo* review." *Eljer Mfg. v. Kowin Dev. Corp.*, 14 F.3d 1250, 1254 (7th Cir. 1994). Courts are "limited to determining whether the arbitrators did the job they were told to do – not whether they did it well, or correctly, or reasonably, but simply whether they did it." *Remmey v. PaineWebber Inc.*, 32 F.3d 143, 146 (4th Cir. 1994).

The arbitrators in NASD arbitrations are not required to give reasons for their decisions.[20] When the arbitrators do not give reasons for their decisions then a party attempting to vacate the award faces a "tremendous obstacle." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros*, 70 F.3d 418, 421 (6th Cir. 1995) (holding that an award issued without reasons should be upheld "[i]f a court can find any line of argument that is legally plausible and supports the award.").

Recently, a federal circuit court of appeals expressed its "exasperation" about frivolous appeals of arbitration awards, and sent a "warning" to prospective appellants that they will be

---

[20]     NASD, *Tour of the Dispute Resolution Process*, supra, at n. 14.

sanctioned for opposing arbitration awards *contrary* to the warning. *See B.L. Harbert Int'l v. Hercules Steel,* 441 F.3d 905, 913 (11th Cir. Feb. 28, 2006):

> When a party who loses an arbitration award assumes a never-say-die attitude and drags the dispute through the court system without an objectively reasonable belief it will prevail, the promise of arbitration is broken . . .

> Courts cannot prevent parties from trying to convert arbitration losses into court victories, but it may be that we can and should insist that if a party on the short end of an arbitration award attacks that award in court without any real legal basis for doing so, that party should pay sanctions. A realistic threat of sanctions may discourage baseless litigation over arbitration awards and help fulfill the purposes of the pro-arbitration policy contained in the FAA . . .

> The notice [herein] provides, hopefully to even the least astute reader, is that this Court is exasperated by those who attempt to salvage arbitration losses through litigation that has no sound basis in the law applicable to arbitration awards. The warning this opinion provides is that in order to further the purposes of the FAA and to protect arbitration as a remedy we are ready, willing, and able to consider imposing sanctions in appropriate cases.

In this case, Securities America cannot carry its tremendous burden to overturn this arbitration award. As a result, this Could should confirm this award.

### Conclusion

For the foregoing reasons, Plaintiffs request a judgment confirming the arbitration award rendered against Securities America in NASD Proceeding No. 03-05687.

Respectfully submitted,

James R. Swanson, 18455
Joseph C. Peiffer, 26459
CORRERO FISHMAN HAYGOOD PHELPS
    WALMSLEY & CASTEIX, L.L.P.
201 St. Charles Avenue, 46th Floor
New Orleans, LA  70170-4600
Telephone:  (504) 586-5252
**Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Memorandum in Support of Motion to Confirm Arbitration Award has been served upon all counsel of record via facsimile and United States mail, postage prepaid and properly addressed, this 1st day of June, 2006.

_____
Joseph C. Peiffer

## CUSTOMER AGREEMENT

To: Securities America, Inc.

In consideration of your opening one or more accounts on my own behalf I represent and agree as follows:

1. I am of Legal Age in the state in which I reside and I am authorized to enter into this agreement.

2. I appoint you as my agent for the purpose of carrying out my directions to you in accordance with the terms and conditions of my agreement with you for my account and risk for the purchase or sale of securities. To carry out your duties, you are authorized to open or close brokerage accounts, place and withdraw orders and take such other steps to carry out my directions.

3. I understand that you have entered into an agreement with National Financial Services Corporation (an NYSE member firm) to execute and clear all brokerage transactions.

4. I understand that National Financial Services Corporation or its agent will hold all securities kept in my account and that these securities will be protected by the Securities Investor Protection Corporation up to $500,000 (including $100,000 cash).

5. In the event I become indebted to you in the course of operation of this account, I agree that I will repay such indebtedness upon demand. I agree that if after demand I fail to pay the indebtedness, you may close my account and liquidate the assets in my account on a pro rata basis, in an amount sufficient to pay my indebtedness.

6. Upon the purchase or sale of any security, if you are unable to settle the transaction by reason of my failure to make payment or deliver securities in good form, I authorize you to take steps necessary to complete the transaction in which event I agree to reimburse you for all costs, losses or liabilities incurred by you.

7. You shall not be liable for loss caused directly or indirectly by war, natural disasters, government restrictions, exchange or market ruling or other conditions beyond your control, including but not limited to extreme market volatility or trading volumes.

8. The reasonable costs of collection of the debit balance and any unpaid deficiency in my accounts, including attorney's fees incurred by you, shall be reimbursed to me by you.

9. I agree to make available to you collected funds in an amount sufficient to cover the amount due on purchases by 2 P.M. Eastern time on settlement date, and I agree to deliver my securities I have in my possession in sufficient time to be received by Securities America, Inc. one day before settlement date.

10. You may exchange credit information about me with others. You may request a credit report on me and, if I ask, you will tell me the name and address of the consumer reporting agency that furnished it.

11. I will not buy or sell securities of a corporation which I am an affiliate of or sell any restricting securities except in compliance with applicable laws and regulations and upon notice to you that the securities are restricted.

12. This agreement shall be governed by the laws of the State of Nebraska.

13. I understand and acknowledge that when securities can be traded in more than one marketplace, in the absence of my specific instructions, you may be subject to applicable regulatory requirements, use your discretion in selecting the market in which to enter my orders.

14. Communications may be sent to me at the address on the application or at such other address as I may hereafter give you in writing, and all communications so sent, whether by mail, telegraph, messenger or otherwise, shall be deemed given to me personally, whether actually received or not.

15. Purchase of Precious Metals. I understand and acknowledge the following in regard to the purchase of precious metals: a) The Securities Investor Protection Corporation (SIPC) does not provide protection for precious metals. However, metals stored through National Financial Services Corporation are insured by the depository at market value. b) Precious metals investments can involve substantial risk as prices can change rapidly and abruptly. Therefore an advantageous purchase or liquidation price cannot be guaranteed. c) If I take delivery of any metals I am subject to delivery charges and applicable sales and use taxes.

16. Purchase of Mutual Funds. I (we) acknowledge and understand that when purchasing Mutual Fund Investments (including No-Load funds), I (we) may be assessed certain transaction, execution and confirmation charges which will be specified on the transaction confirmation. I (we) further acknowledge and understand that I (we) are aware that Mutual Fund shares may be purchased directly from the Mutual Fund Investment Company without any sales charges on No-Load Funds or any charges in excess of the amounts disclosed in the prospectus for Mutual Fund shares sold with a sales charge.

## PRE-DISPUTE ARBITRATION AGREEMENT

YOUR ACCOUNT IS SUBJECT TO THE ARBITRATION RULES OF THE NEW YORK STOCK EXCHANGE, INC. OR NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. ARBITRATION IS USED TO RESOLVE A DISPUTE BETWEEN TWO PARTIES. BECAUSE CONTROVERSIES INVOLVING BROKERAGE FIRMS OFTEN INVOLVE COMPLICATED ISSUES, ARBITRATION FORUMS WERE CONCEIVED BY THE SECURITIES AND EXCHANGE COMMISSION THE NEW YORK STOCK EXCHANGE, INC. AND THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. TO PROVIDE AN ALTERNATIVE DISPUTE RESOLUTION MECHANISM FOR INVESTORS WHICH IS USUALLY MORE EFFICIENT AND LESS COSTLY THAN COURT LITIGATION. YOU SHOULD BE AWARE OF THE FOLLOWING:

(A) ARBITRATION IS FINAL AND BINDING ON THE PARTIES.
(B) THE PARTIES ARE WAIVING THEIR RIGHT TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO JURY TRIAL.
(C) PRE-ARBITRATION DISCOVERY IS GENERALLY MORE LIMITED THAN AND DIFFERENT FROM COURT PROCEEDINGS.
(D) THE ARBITRATORS' AWARD IS NOT REQUIRED TO INCLUDE FACTUAL FINDINGS OR LEGAL REASONING AND ANY PARTY'S RIGHT TO APPEAL OR TO SEEK MODIFICATION OF RULINGS BY THE ARBITRATORS IS STRICTLY LIMITED.
(E) THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.
(F) I ACKNOWLEDGE THAT IT IS UNDERSTOOD THAT CLASS ACTION MATTERS MAY NOT BE SUBMITTED TO ARBITRATION BEFORE THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC.

I AGREE THAT ALL CONTROVERSIES THAT MAY ARISE BETWEEN US CONCERNING ANY ORDER OR TRANSACTION, OR THE CONSTRUCTION, PERFORMANCE OR BREACH OF THE AGREEMENT OR ANY OTHER AGREEMENT BETWEEN US, WHETHER ENTERED INTO BEFORE, ON, OR AFTER THE DATE THIS ACCOUNT IS OPENED, SHALL BE DETERMINED BY ARBITRATION BEFORE A PANEL OF INDEPENDENT ARBITRATORS SET UP BY EITHER THE NEW YORK STOCK EXCHANGE, INC. OR NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. AS I MAY DESIGNATE.

I MAY ALSO DESIGNATE THE AMERICAN ARBITRATION ASSOCIATION OR ANY OTHER INDUSTRY FORUM ONLY TO THE EXTENT EXPRESSLY PROVIDED AS AN ALTERNATIVE UNDER THE SECURITIES LAWS OF MY STATE OF RESIDENCE. IF I DO NOT NOTIFY YOU IN WRITING OF MY DESIGNATION WITHIN FIVE (5) DAYS AFTER I RECEIVE FROM YOU A WRITTEN DEMAND FOR ARBITRATION, THEN I AUTHORIZE YOU TO MAKE SUCH DESIGNATION ON MY BEHALF. I UNDERSTAND THAT JUDGMENT UPON ANY ARBITRATION AWARD MAY BE ENTERED IN ANY COURT OF COMPETENT JURISDICTION

*Customer (Please retain for your records)*

Confidential, Subject to Protective Order

SAI-000004







FORMAT FOR PRINTING sponsored by TOSHIBA Don't copy. Lead.®

**May 17, 2006**

# NASD Panel Awards Exxon Workers $22 Million

**By SUSANNE CRAIG**
*May 17, 2006; Page C3*

A group of retired, largely blue-collar **Exxon Mobil** Corp. employees who claim their broker dumped them into risky investments have been awarded $22 million, including almost $3.5 million in punitive damages, one of the largest awards of its kind ever levied against a Wall Street firm.

The award against **Ameriprise Financial** Inc. subsidiary Securities America Inc. was handed down Monday by a three-person National Association of Securities Dealers arbitration panel. It centers on the firm's selling of two controversial investments: variable annuities and mutual fund B-shares, both of which have been the subject of recent enforcement actions. Class B shares are broker-sold shares that don't carry a front-end sales charge but do carry higher annual fees than other fund shares.

(A new report says brokerage firms may have overreacted in limiting B-share sales as a result of the scrutiny. See Fund Track[1].)

In recent years Ameriprise has come under fire from regulators for some of its sale practices in these areas, and the NASD is investigating this most recent case, according to people familiar with the matter. At least two Securities America staffers, including the broker involved in the case, have been notified they may face civil charges.

The award is one of only a handful of customer-related complaints to top the $20 million mark, according to the Securities Arbitration Commentator, a newsletter that tracks awards. The $22 million award includes $11.6 million in compensatory damages, $3.5 million in punitive damages, $4.7 million in attorney's fees, interest currently totaling $1.8 million and another $453,000 in costs.

A Securities America spokesman said yesterday: "We feel very strongly the decision was wrongfully decided, and we intend to file a motion to vacate." David McFadden, the Securities America broker involved in the case, said: "I disagree and am disappointed with the award."

The Exxon award involves the advice 32 former Exxon employees, most of whom live in the

**DOW JONES REPRINTS**

®R This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers, use the Order Reprints tool at the bottom of any article or visit: www.djreprints.com.

• See a sample reprint in PDF format.
• Order a reprint of this article now.



**Start a FREE trial of the Online Journal**



**Subscribe to The Print Journal**

**Free US Quotes:**

◉ Symbol
○ Name

[_____] ⊕

Get FREE **E-Mail** by topic

Check Out our **Mobile & Wireless Services**

**DIGEST OF EARNINGS**

Details of the latest corporate earnings reported for FREE.



Baton Rouge, La., area, received from Securities America and Mr. McFadden, who specializes in providing advice to employees of the oil giant. Many of the employees, including three pipe fitters, had worked at Exxon for most of their careers.

"These were a bunch of good, hard-working people who put their trust in McFadden, and he betrayed that, and, as a result, they have lost much of their retirement savings, and many have had to return to work, some as Wal-Mart greeters and one who now stocks vending machines for a living," said the group's lawyer, Joe Peiffer, who is based in New Orleans.

Mr. McFadden, according to the group's joint statement of claim against Securities America, advised all the employees to retire and told them "they would be able to live a lifestyle equal to or superior to the one they had while working." He told some of the Exxon employees that they were going "to need to learn how to spend money."

He promised them impressive returns and put their retirement savings primarily in variable annuities and mutual-fund B shares, according to the statement of claim. However, he failed to disclose the high fees that would flow to him and the firm, according to the claim. "In selling these products he put his interest in his own income ahead of his clients' interests," the claim says.

Variable annuities and B shares are appropriate for some investors. Variable annuities for instance, allow investors to defer taxes on their money. But the Exxon employees' money already

### Major Cases Against Ameriprise

| DATE | FINE | VIOLATION |
|---|---|---|
| Dec. 1, 2005 | $12,300,000 | Directed brokerage violations |
| Oct. 26, 2005 | 500,000 | Supervisory violations in 529 plans |
| March 23, 2005 | 13,000,000 | Improper sales of class A and B shares of mutual funds |
| December 2004 | 400,000 | Failure to timely file sales literature |
| Dec. 12, 2004 | 1,800,000 | Paid to NASD for failure to provide breakpoint discounts (an equal amount paid to the SEC) |
| Nov. 30, 2004 | 700,000 | Late disclosures of reportable information about their brokers |
| Dec. 4, 2002 | 350,000 | Improper sales of variable annuities and life insurance |

Source: NASD

was tax deferred so they didn't benefit from this, while incurring the costs associated with the annuities, according to Mr. Peiffer. As for the B shares, Mr. Peiffer says Mr. McFadden didn't disclose the fees.

The losses incurred by the Exxon employees were substantial in some instances. In the case of 63-year-old Wayland Adams, a machinist supervisor, the $992,208 investment he made with Mr. McFadden in 1998 was worth $302,265 by May 2003. Mr. McFadden made a commission of $66,679 on Mr. Adams' investment, in this case a variable annuity, according to Mr. Peiffer.

The arbitration panel awarded Mr. Adams $629,740.32 in damages and another $189,418.60 in punitive damages.

Securities America was purchased by Ameriprise in 1998, and its brokers operate like independent business people.

Ameriprise yesterday, in a regulatory filing, said the award, if upheld, will not have a material impact on its earnings.

**Write to** Susanne Craig at susanne.craig@wsj.com[2]

**URL for this article:**
http://online.wsj.com/article/SB114781658077854619.html

**Hyperlinks in this Article:**
**(1)** http://online.wsj.com/article/SB114782588071754862.html
**(2)** mailto:susanne.craig@wsj.com

***Copyright 2006 Dow Jones & Company, Inc. All Rights Reserved***

This copy is for your personal, non-commercial use only. Distribution and use of this material are governed by our
**Subscriber Agreement** and by copyright law. For non-personal use or to order multiple copies, please contact Dow Jones
Reprints at 1-800-843-0008 or visit **www.djreprints.com**.

Case 2:06-cv-02909-JCZ-JCW    Document 16-3    Filed 06/01/06    Page 13 of 38

**LIVESTRONG** Portfolios from American Century Investments.
A smart, simple way to invest in your future.    ▶ Get your FREE Investing Kit





# Forbes.com

U.S. | EUROPE | ASIA

Jump | Free Trial Issue
Select Section

○ Search ○ Quote
Go

HOME PAGE FOR THE WORLD'S BUSINESS LEADERS

HOME   BUSINESS   TECHNOLOGY   MARKETS   ENTREPRENEURS   WORK   PERSONAL FINANCE   FORBESLIFE

Home > News & Analysis

E-mail | Comments | E-Mail Newsletters | ⊠ My Yahoo! | RSS

## Associated Press



# Update 2: NASD Panel Awards Exxon Mobil Retirees

By MARCY GORDON , 05.17.2006, 08:55 PM

**Related Quotes**

| | | |
|---|---|---|
| AMP | 46.23 | + 0.46 |
| AXP | 54.36 | + 0.00 |
| XOM | 60.68 | - 0.23 |



»get quotes

**Most Popular Stories**

Most Expensive Homes In The U.S. 2006

Best Car Deals 2006

The Best Billionaire Hotels

Top Job Myths

**Best Big Companies**

**Most Popular Videos**

The Perfect Pitch

The Most Expensive Home In America

Writing On The Wall

Vehicles Loaded With Value

Joining The Circuit

A securities-industry arbitration panel has awarded $22 million to a group of Exxon Mobil Corp. retirees who accused brokerage firm Securities America Inc. of improperly steering them into high-risk investments between 1996 and mid-2003.

The three-member panel of the National Association of Securities Dealers, the brokerage industry's self-policing organization, made the award Monday against Securities America, a subsidiary of Ameriprise Financial Inc.

The $22 million award includes some $11.6 million in compensatory damages, $3.5 million in punitive damages and $4.7 million in attorneys' fees, and is said by experts to be one of the largest of its kind ever levied against a brokerage firm.

Securities America said it would appeal the ruling, which was first reported in Wednesday's editions of The Wall Street Journal and confirmed by the NASD.

Minneapolis-based Ameriprise Financial, which was spun off from American Express Co. last fall, provides financial planning, asset management and

**E-Mail Alerts**

Get new stories by e-mail as they are published **FREE**

**Companies**

☐ AMP

☐ XOM

☐ AXP

**Topics**

☐ AP Business

**Enter E-Mail Address:**

FAQ  Privacy Policy

**E-MAIL NEWSLETTERS**

**DESKTOP ALERTS**

Make Forbes.com My Home Page

Bookmark This Page

Free Trial Issue

Gift Subscriptions

**Trading Center**



Case 2:06-cv-02503-JCZ-JCW   Document 103   Filed 06/01/06   Page 14 of 38

insurance with a major focus on baby boomers with $100,000 to $1 million in assets.

At issue in the arbitration case were Securities America's sales to the Exxon Mobil employees of variable annuities and Class B mutual fund shares. Regulators have targeted some of Ameriprise's sales practices in the two areas in recent years.

A Securities America broker promised the 32 mostly blue-collar employees huge returns on their investments and put their retirement savings mostly into variable annuities and Class B fund shares, according to the group's claim against the brokerage. It said that the broker, David McFadden, failed to disclose the high fees that he and Securities America would reap.

The employees "put their faith in this securities company and their broker," Joseph Peiffer, a New Orleans attorney who represented them, said in a statement issued late Wednesday. "The arbitration panel agreed with us that McFadden ... and Securities America betrayed that faith, leading to a substantial loss of much of their retirement savings."

"My clients were told they would be able to enjoy a lifestyle equal to the one they had while working," Peiffer said. "Instead, many of them ended up going back to work as Wal-Mart greeters, stocking vending machines or other jobs paying a fraction of what they made at Exxon."

While the alleged offenses occurred between 1996 and mid-2003, the bulk of them took place in 1997-98, according to attorneys representing the employees. Securities America was acquired by Ameriprise Financial in 1998; its brokers are said to operate as independent business people.

The Journal quoted a Securities America spokesman as saying: "We feel very strongly the decision was wrongly decided, and we intend to file a motion to vacate." Said McFadden: "I disagree and am disappointed with the award."

Typically, investors in Class B fund shares don't pay an upfront sales commission when they make a purchase, but often pay higher fees and a commission when they sell the shares. Class B shares have been criticized by regulators because some investors purchase them on the incorrect belief that they are commission-free.

Variable annuities are contracts between an investor and the company selling it in which the company agrees to make periodic payments to the investor, beginning immediately or at some future date. Their periodic payouts change depending on the performance of the underlying mutual funds, bonds or other investments.

Sales of variable annuities, which are tax-deferred and often used to save for retirement, have ballooned in recent years. The NASD regulators have received complaints from individual investors about sales practices and have taken numerous disciplinary actions against individual brokers and investment firms for alleged sales abuses.

—

Brought to you by



**ForbesAutos.com**

The World's Largest Luxury Showroom. Fi the right luxury vehicle at the best price ar buy your new car with confidence on ForbesAutos.com.

ForbesAutos.com featured vehicle:
**Jaguar XJ Super V8**
The Super V8 with its 400-horsepower su engine wants for nothing.

You can get a free pri a local dealer or build **Jaguar XJ Super V8**



## Panel awards retirees millions

### Money was placed in risky investments

### By CHAD CALDER
Advocate business writer
Published: May 18, 2006

Thirty-two retirees from the ExxonMobil refinery and chemical plant in north Baton Rouge have been awarded $22 million by an arbitration panel, part of a ruling from allegations that a local financial planner had put their money in risky investments.

The financial planner, David McFadden of Securities America, said he disagrees with and is disappointed by the ruling. He said he plans to ask the arbitration panel to vacate the award, which would kick it to federal court.

The decision was made by a three-member panel of the National Association of Securities Dealers.

Its $3.5 million in punitive damages is one of the largest ever levied against a Wall Street firm, said Jim Swanson, one of the attorney's representing the retirees.

Advertisements

DESPERATE HOUSEWIVES
Sundays 8pm   abc

Swanson said the plaintiffs had claimed that McFadden would invite people to free dinner seminars about how to get ready for retirement, at which he would pitch one-on-one meetings to discuss individual portfolios.

When he had these meetings, Swanson said, McFadden told the retirees, who were then still employed, that they were ready to retire and that he could invest their retirement earnings in a way that would meet their financial needs.

But Swanson alleges McFadden steered the money into annuities and Class B share mutual funds, which he said are not appropriate for retirement income. Swanson said annuities are usually for tax-deferral purposes, and made no sense as an investment for the retirees because their money was tax deferred. Annuities do, however, pay a large commission, he said.
"Annuities are the highest commission product you can sell," Swanson said. "You get 6 percent on them."

Swanson and fellow attorney Joseph Peiffer pointed to a 1989 Forbes Magazine cover story called "Don't be a sucker: Variable annuities are a lousy investment."

"These products have been pretty controversial for some time," Swanson said.

As for the Class B share mutual funds, Swanson said they carry higher annual fees in exchange for no up-front sales charges, and are for people who would not buy very many shares.

"If you have the kind of money our people did, you should not be investing in B share mutual funds," he said.

Swanson said the retirees, who were blue-collar workers ranging from pipefitters to low-level supervisors, had plenty of common sense but not the investment expertise to recognize that their money wasn't invested properly until it was too late.
"Within three or four years they had less than half of their money left," he said, adding some were wiped out entirely.

Swanson alleged McFadden was making between a $1 million and $1.5 million during the years in question.

McFadden said he could not discuss any details of the case since he plans to ask the panel to vacate the award, but wanted to assure his customers and those of Securities America that the ruling would not affect their investments or financial well-being.

As for McFadden's plans to have the award vacated, Swanson said he and Peiffer have already filed a motion in federal court to confirm it.

Swanson said the amounts given to each plaintiff were based on what they lost, ranging between $100,000 to $3 million.
The Wall Street Journal reported that the award is one of only a handful of customer-related complaints to top the $20 million mark. It includes $11.6 million in compensatory damages, $3.5 million in punitive damages, $4.7 million in attorney's fees, interest currently totaling $1.8 million and another $453,000 in costs.

Securities America is owned by Ameriprise Financial Inc., which bought the company in 1998.

SAVE THIS    EMAIL THIS    PRINT THIS    MOST POPULAR    RSS FEEDS

Ads by Google                        Advertise on this site

**Raise Money for Katrina**
Raise more money for Katrina relief with free online fundraising pages.
www.firstgiving.com

**Unique Home Designs**
Innovative prefab circular homes. Hurricane and tornado resistant!
www.DeltecHomes.com

**Hurricane Katrina**
KHOU tracks Katrina's aftermath and the evacuation to Houston.
www.KHOU.com

FedEx Ground — Reliable delivery for ordinary items.

CLICK TO LEARN MORE ▶▶▶

The Internet home of: **FORTUNE**   **Money**   **BUSINESS 2.0**   **FORTUNE** SMALL BUSINESS

**CNNMoney.com**℠

GET QUOTES   SYMBOL LOOK-UP

HOME   NEWS   MARKETS   TECHNOLOGY   JOBS & ECONOMY   PERSONAL FINANCE   AUTOS

# Ameriprise loses $19.6M arbitration case

**NASD finds for plaintiff in lawsuit brought against former brokerage arm of American Express.**

May 17, 2006: 8:16 AM EDT

NEW YORK (Reuters) - Ameriprise Financial Inc., the brokerage spun off last year by American Express Co., said Tuesday an NASD panel ruled against its Securities America Inc. unit in an arbitration, and awarded the plaintiffs about $19.6 million.

The arbitration panel handed down the award Monday in a case titled Wayland Adams et al. vs. David McFadden and Securities America Inc., Ameriprise spokesman Paul Johnson said.

Minneapolis-based Ameriprise (Research) said Securities America disagrees with the decision and intends to appeal the award. It said the award, if upheld, would not materially affect earnings.

Ameriprise disclosed the decision in a regulatory filing. The NASD is the securities industry's self-regulatory arm.

---

Brokers are obligated to see that what they sell fits you... but complaints of unsuitable investments are among the most common. Click here for more. ∎

SAVE   |   EMAIL   |   PRINT   |   RSS

| More Company News |
| --- |
| The oil spike blame game |
| Yoga...Soy..McDonald's? |
| GM chief accounting officer to resign |
| **The Hot List** |
| Latest home prices...149 markets |
| Toys of the rich and fabulous |
| Top 50: Most entry-level jobs for grads |

**NASD Dispute Resolution**
www.nasd.com
Southeast Region
Boca Center • 5200 Town Center Circle • Tower 1 • Suite 200
Boca Raton, FL • 33486-1012 • 561-416-0277 • Fax 301-527-4868





**FAXED**
504-586-5250

May 15, 2006

Joseph C. Peiffer, Esq.
Correro Fishman Haygood Phelps, et al
201 St. Charles Avenue
46th Floor
New Orleans, LA  70170-4600

Subject:    NASD Dispute Resolution Arbitration Number 03 05687
Wayland Adams, Teleson Babin and Mary Babin, et al vs. David McFadden and
Securities America, Inc.

Dear Mr. Peiffer:

In accordance with the NASD Code of Arbitration Procedure (the "Code"), I enclose the decision reached by the arbitrator(s) in the above-referenced matter.

## Responsibility to Pay Monetary Award

Pursuant to Rule 10330(h) of the Code, the responsible party must pay any monetary awards within 30 days of receipt unless a motion to vacate has been filed with a court of competent jurisdiction. If an award is not paid within 30 days, the responsible party must pay post-judgment interest at the legal rate or as provided in the award by the arbitrator(s).

## Tracking Payment of Award

NASD Dispute Resolution has implemented a system of monitoring and tracking compliance with arbitration awards by members and associated persons. We request prevailing claimants to notify us in writing when their awards have not been paid within 30 days of receipt of the award, and require member firms to certify in writing that they have complied with awards against them or their associated persons. The 30-day period ends on: June 19, 2006.

Written notification concerning award compliance or lack thereof must be directed to:

Jennifer Kozielski
NASD Dispute Resolution
One Liberty Plaza,
165 Broadway, 52nd Floor
New York, NY 10006
212-858-4481 (tel) 301-527-4761 (fax)



## Expedited Suspension Proceedings for Non-Payment of Awards

Members and associated persons who do not comply with an award in a timely manner are subject to expedited suspension proceedings as set forth in Rule 9554, which is part of the NASD Manual.

## Right to File Motion to Vacate Award

All awards are final and are not subject to review or appeal by the arbitration panel or by NASD Dispute Resolution. Any party wishing to challenge the award must make a motion to vacate the award in a federal or state court of appropriate jurisdiction pursuant to the Federal Arbitration Act, 9 U.S.C. § 10, or applicable state statute. There are limited grounds for vacating an arbitration award, and a party must bring a motion to vacate within the time period specified by the applicable statute. Parties and counsel should consult federal and state statutes and case law to determine the appropriate court, standards, and time limitations in their individual circumstances. NASD Dispute Resolution is not authorized to provide legal advice concerning a motion to vacate.

A motion to vacate, confirm, or modify an arbitration award is a matter only between the parties to the arbitration. NASD Dispute Resolution is not a proper party to post-award motions and should not be named as a party to any post-award motion. However, for cases filed on or after April 12, 2004, if the award contains expungement relief, or if a party seeks expungement relief in court, there may be a duty to name NASD as a party as provided in Rule 2130.

## Questions Concerning Award

Please direct any questions regarding this award to me. **The parties must not contact the arbitrators directly.**

## Forum Fees

Enclosed is an invoice that reflects the fees assessed and any outstanding balances. Fees are payable to NASD Dispute Resolution.

If a refund is due, it will be sent under separate cover. All refunds, even if payment is made by a non-party on behalf of a party, will be made payable to the party and will be sent in care of the party's representative.

## Arbitration Evaluation

As a service organization, the primary goals of NASD Dispute Resolution are the integrity of its process and the satisfaction of its clients. To ensure that we are meeting your needs and satisfying our commitment to you, we need to hear from you. If you have not already done so, please take the time to complete an evaluation of our services, the process, and the arbitrator(s) assigned to your case. For your convenience, we have now made it possible for you to evaluate our services using the Internet. Please direct your Web browser to http://www.nasd.com/arbevaluation. If you do not have Internet access, or have difficulty completing the evaluation online, you may complete the paper version of the evaluation that was previously provided to you and mail it to the address indicated.

If you need another paper copy of the evaluation form, please contact the undersigned. Whenever possible, however, please use the new online version, as it will help us to review your feedback in a more expeditious and analytical manner. Your feedback is a valuable and necessary component in our efforts to serve you better.

Very truly yours,

William J. Cassidy
Senior Attorney
561-447-4900  Fax: 301-527-4868

WJC:WJC:LC09A
rc:4/06

RECIPIENTS:
Joseph C. Peiffer, Esq., Wayland Adams
Correro Fishman Haygood Phelps, et al, 201 St. Charles Avenue, 46th Floor,
New Orleans, LA  70170-4600

Joseph C. Peiffer, Esq., Teleson Babin
Correro Fishman Haygood Phelps, et al, 201 St. Charles Avenue, 46th Floor,
New Orleans, LA  70170-4600

Joseph C. Peiffer, Esq., Mary Babin
Correro Fishman Haygood Phelps, et al, 201 St. Charles Avenue, 46th Floor,
New Orleans, LA  70170-4600

Joseph C. Peiffer, Esq., The Babin Family Trust
Correro Fishman Haygood Phelps, et al, 201 St. Charles Avenue, 46th Floor,
New Orleans, LA  70170-4600

Joseph C. Peiffer, Esq., Willard Beard
Correro Fishman Haygood Phelps, et al, 201 St. Charles Avenue, 46th Floor,
New Orleans, LA  70170-4600

Joseph C. Peiffer, Esq., Sharon Bennett, lgl survivr of Richard
Correro Fishman Haygood Phelps, et al, 201 St. Charles Avenue, 46th Floor,
New Orleans, LA  70170-4600

Joseph C. Peiffer, Esq., Sharon Bennett
Correro Fishman Haygood Phelps, et al, 201 St. Charles Avenue, 46th Floor,
New Orleans, LA  70170-4600

Joseph C. Peiffer, Esq., Eddie Carroll
Correro Fishman Haygood Phelps, et al, 201 St. Charles Avenue, 46th Floor,
New Orleans, LA  70170-4600

Joseph C. Peiffer, Esq., Audrey Crochet

Correro Fishman Haygood Phelps, et al, 201 St. Charles Avenue, 46th Floor,
New Orleans, LA  70170-4600

Joseph C. Peiffer, Esq., James Duty
Correro Fishman Haygood Phelps, et al, 201 St. Charles Avenue, 46th Floor,
New Orleans, LA  70170-4600

Joseph C. Peiffer, Esq., Kirby Duty
Correro Fishman Haygood Phelps, et al, 201 St. Charles Avenue, 46th Floor,
New Orleans, LA  70170-4600

Joseph C. Peiffer, Esq., George Franklin
Correro Fishman Haygood Phelps, et al, 201 St. Charles Avenue, 46th Floor,
New Orleans, LA  70170-4600

Joseph C. Peiffer, Esq., Louis Gauthier, Jr.
Correro Fishman Haygood Phelps, et al, 201 St. Charles Avenue, 46th Floor,
New Orleans, LA  70170-4600

Joseph C. Peiffer, Esq., Charles T. Miller
Correro Fishman Haygood Phelps, et al, 201 St. Charles Avenue, 46th Floor,
New Orleans, LA  70170-4600

Joseph C. Peiffer, Esq., George Ashley Moore
Correro Fishman Haygood Phelps, et al, 201 St. Charles Avenue, 46th Floor,
New Orleans, LA  70170-4600

Joseph C. Peiffer, Esq., Russell Normand
Correro Fishman Haygood Phelps, et al, 201 St. Charles Avenue, 46th Floor,
New Orleans, LA  70170-4600

Joseph C. Peiffer, Esq., Charles and Candace Norton
Correro Fishman Haygood Phelps, et al, 201 St. Charles Avenue, 46th Floor,
New Orleans, LA  70170-4600

Joseph C. Peiffer, Esq., Robert Parent
Correro Fishman Haygood Phelps, et al, 201 St. Charles Avenue, 46th Floor,
New Orleans, LA  70170-4600

Joseph C. Peiffer, Esq., Glenn Parrott
Correro Fishman Haygood Phelps, et al, 201 St. Charles Avenue, 46th Floor,
New Orleans, LA  70170-4600

Joseph C. Peiffer, Esq., Allen Pourciau
Correro Fishman Haygood Phelps, et al, 201 St. Charles Avenue, 46th Floor,
New Orleans, LA  70170-4600

Joseph C. Peiffer, Esq., Warren Richard
Correro Fishman Haygood Phelps, et al, 201 St. Charles Avenue, 46th Floor,
New Orleans, LA  70170-4600

Joseph C. Peiffer, Esq., Ronald Richardson
Correro Fishman Haygood Phelps, et al, 201 St. Charles Avenue, 46th Floor,
New Orleans, LA 70170-4600

Joseph C. Peiffer, Esq., Bradley Simon
Correro Fishman Haygood Phelps, et al, 201 St. Charles Avenue, 46th Floor,
New Orleans, LA 70170-4600

Joseph C. Peiffer, Esq., Carl Smith
Correro Fishman Haygood Phelps, et al, 201 St. Charles Avenue, 46th Floor,
New Orleans, LA 70170-4600

Joseph C. Peiffer, Esq., Andrew Spinks
Correro Fishman Haygood Phelps, et al, 201 St. Charles Avenue, 46th Floor,
New Orleans, LA 70170-4600

Joseph C. Peiffer, Esq., M.J. Stallings
Correro Fishman Haygood Phelps, et al, 201 St. Charles Avenue, 46th Floor,
New Orleans, LA 70170-4600

Joseph C. Peiffer, Esq., Lionel Theriot
Correro Fishman Haygood Phelps, et al, 201 St. Charles Avenue, 46th Floor,
New Orleans, LA 70170-4600

Joseph C. Peiffer, Esq., Richard and Dona White
Correro Fishman Haygood Phelps, et al, 201 St. Charles Avenue, 46th Floor,
New Orleans, LA 70170-4600

George D. Fagan, Esq., David McFadden
Leake & Andersson, 1100 Poydras St. New Orleans, LA 70163

Joseph C. Peiffer, Esq., George A. Moore and Elaine M. Moore
Correro Fishman Haygood Phelps, et al, 201 St. Charles Avenue, 46th Floor,
New Orleans, LA 70170-4600

Joseph C. Peiffer, Esq., Cheryl Taylor
Correro Fishman Haygood Phelps, et al, 201 St. Charles Avenue, 46th Floor,
New Orleans, LA 70170-4600

George D. Fagan, Esq., Securities America, Inc.
Leake & Andersson, 1100 Poydras St. New Orleans, LA 70163

Joseph C. Peiffer, Esq., Pat Salatich
Correro Fishman Haygood Phelps, et al, 201 St. Charles Avenue, 46th Floor,
New Orleans, LA 70170-4600

Joseph C. Peiffer, Esq., Jody Devall & J, A & K as suv for Robt
Correro Fishman Haygood Phelps, et al, 201 St. Charles Avenue, 46th Floor,
New Orleans, LA 70170-4600

Joseph C. Peiffer, Esq., Willie and Laverne Baker

Correro Fishman Haygood Phelps, et al, 201 St. Charles Avenue, 46th Floor, New Orleans, LA 70170-4600

Joseph C. Peiffer, Esq., Arthur and Jacqueline Lambert
Correro Fishman Haygood Phelps, et al, 201 St. Charles Avenue, 46th Floor, New Orleans, LA 70170-4600

Joseph C. Peiffer, Esq., Charles O. and Connie Miller
Correro Fishman Haygood Phelps, et al, 201 St. Charles Avenue, 46th Floor, New Orleans, LA 70170-4600

---

**Award**
**NASD Dispute Resolution**

---

In the Matter of the Arbitration Between:

<u>Names of the Claimants</u>                    <u>Case Number</u>: 03-05687
Wayland Adams
Teleson Babin and Mary Babin, both
individually and in their capacity as Trustees
of the Babin Family Trust
Willie and Laverne Baker
Willard Beard
Sharon Bennett individually and in her capacity
as the legal survivor of Richard Bennett
Eddie Carroll
Audrey Crochet
Jody Devall and Jody, Andrea and Karrie Devall in their
capacity as the legal survivors of Robert Devall
James Duty
Kirby Duty
George Franklin
Louis Gauthier, Jr.
Arthur and Jacqueline Lambert
Charles T. Miller
Charles O. and Connie Miller
George Ashley Moore
George Allen Moore and Elaine Moore
Russell Normand
Charles Norton and Candace Norton
Robert Parent
Glenn Parroll
Russell and Palmer Perque in their capacity
as the legal survivors of Sharon Perque
Allen Pourciau
Warren Richard
Ronald Richardson
Pat Saletich
Bradley Simon
Carl Smith
Andrew Spinks
M.J. Stallings
Cheryl Taylor
Lionel Theriot
Richard White and Dona White

<u>Names of the Respondents</u>                    <u>Hearing Site</u>: New Orleans, LA
David McFadden
Securities America, Inc.

NASD Dispute Resolution
Arbitration No. 03-05687
Award   Page 2

Nature of the Dispute:  Customer vs. Member and Associated Person.

## REPRESENTATION OF PARTIES

For Wayland Adams, Teleson Babin and Mary Babin, both individually and in their capacity as Trustees of The Babin Family Trust, Willie and Laverne Baker, Willard Beard, Sharon Bennett individually and in her capacity as the legal survivor of Richard Bennett, Eddie Carroll, Audrey Crochet, Jody Devall and Jody, Andrea and Karrie Devall in their capacity as the legal survivors of Robert Devall, James Duty, Kirby Duty, George Franklin, Louis Gauthior, Jr., Arthur and Jacqueline Lambert, Charles T. Miller, Charles O. and Connie Miller, George Ashley Moore, George Allen Moore and Elaine Moore, Russell Normand, Charles Norton and Candace Norton, Robert Parent, Glenn Parrott, Russell and Palmer Perque in their capacity as the legal survivors of Sharon Perque, Allen Pourciau, Warren Richard, Ronald Richardson, Pat Salatich, Bradley Simon, Carl Smith, Andrew Spinks, M.J. Stallings, Cheryl Taylor, Lionel Theriot, Richard White and Dona White, hereinafter collectively referred to as "Claimants": James R. Swanson, Esq. and Joseph C. Peiffer, Esq., Correro Fishman Haygood Phelps Walmsley & Casteix, L.L.P., New Orleans, Louisiana.

For David McFadden ("McFadden") and Securities America, Inc. ("SAI"), hereinafter collectively referred to "Respondents": George D. Fagan, Esq., Leake & Anderson, L.L.P., New Orleans, Louisiana.

## CASE INFORMATION

Statement of Claim filed on or about: July 31, 2003.
Amended Statement of Claim filed on or about: September 5, 2003.
Second Amended Statement of Claim filed on or about: October 2, 2003.
Third Amended Statement of Claim filed on or about: December 29, 2003.
Fourth Amended Statement of Claim filed on or about: February 16, 2004.
Fifth Amended Statement of Claim filed on or about: July 26, 2004.

Claimant Wayland Adams signed the Uniform Submission Agreement on: July 20, 2003.
Claimants Teleson Babin and Mary Babin, both individually and in their capacity as Trustees of The Babin Family Trust, signed the Uniform Submission Agreement on: July 1, 2003.
Claimants Willie and Laverne Baker signed the Uniform Submission Agreement on: May 10, 2006.
Claimant Willard Beard signed the Uniform Submission Agreement on: July 30, 2003.
Claimants Richard Bennett and Sharon Bennett signed the Uniform Submission Agreement on: July 23, 2003.
Claimant Eddie Carroll signed the Uniform Submission Agreement on: July 25, 2003.
Claimant Audrey Crochet signed the Uniform Submission Agreement on: July 24, 2003.
Claimants Robert Devall and Jody Devall signed the Uniform Submission Agreement on: January 30, 2004.
Claimant James Duty signed the Uniform Submission Agreement on: June 16, 2003.
Claimant Kirby Duty signed the Uniform Submission Agreement on: June 16, 2003.
Claimant George Franklin signed the Uniform Submission Agreement on: July 1, 2003.

NASD Dispute Resolution
Arbitration No. 03-05687
Award   Page 3

Claimant Louis Gauthier, Jr. signed the Uniform Submission Agreement on: June 18, 2003.
Claimant Arthur Lambert signed the Uniform Submission Agreement on: July 26, 2004.
Claimant Jacqueline Lambert signed the Uniform Submission Agreement on: July 31, 2004.
Claimant Charles T. Miller signed the Uniform Submission Agreement on: July 24, 2003.
Claimants Charles O. and Connie Miller signed the Uniform Submission Agreement on: July 28, 2003.
Claimant George Ashley Moore signed but did not date the Uniform Submission Agreement.
Claimants George Allen Moore and Elaine Moore signed the Uniform Submission Agreement on: September 3, 2003.
Claimant Russell Normand signed the Uniform Submission Agreement on: July 9, 2003.
Claimants Charles Norton and Candace Norton signed the Uniform Submission Agreement on: July 8, 2003.
Claimant Robert Parent signed the Uniform Submission Agreement on: July 8, 2003.
Claimant Glenn Parrott signed the Uniform Submission Agreement on: June 16, 2003.
Claimant Sharon Perque signed the Uniform Submission Agreement on: December 30, 2003.
Claimant Allen Pourciau signed the Uniform Submission Agreement on: July 1, 2003.
Claimant Warren Richard signed the Uniform Submission Agreement on: July 29, 2003.
Claimant Ronald Richardson signed the Uniform Submission Agreement on: June 25, 2003.
Claimant Pat Salatich signed the Uniform Submission Agreement on: December 19, 2003.
Claimant Bradley Simon signed the Uniform Submission Agreement on: June 16, 2003.
Claimant Carl Smith signed the Uniform Submission Agreement on: June 25, 2003.
Claimant Andrew Spinks signed the Uniform Submission Agreement on: July 19, 2003.
Claimant M.J. Stallings signed the Uniform Submission Agreement on: June 26, 2003.
Claimant Cheryl Taylor signed the Uniform Submission Agreement on: September 29, 2003.
Claimant Lionel Theriot signed the Uniform Submission Agreement on: July 14, 2003.
Claimants Richard White and Dona White signed the Uniform Submission Agreement on: July 28, 2003.

Respondents' Statement of Answer to Statement of Claim and Amended Statement of Claim filed on or about: November 18, 2003.
Respondents' Response to Claimants' Third Amended Statement of Claim filed on or about: August 26, 2004.
Respondents' Response to Claimants' Fifth Amended Statement of Claim filed on or about: September 28, 2004.

Respondent McFadden signed the Uniform Submission Agreement on: November 18, 2003.
Respondent SAI signed the Uniform Submission Agreement on: November 10, 2003.

Claimants' Consent Motion to Amend the Third Amended Statement of Claim filed on or about February 16, 2004.

NASD Dispute Resolution
Arbitration No. 03-05687
Award   Page 4

Claimants' Consent Motion to Amend the Fourth Amended Statement of Claim filed on
or about: July 26, 2004.

Respondents' Motion for Order of Substitution filed on or about: August 9, 2004.
Claimants' Response to Respondents' Motion for Order of Substitution filed on or about:
August 23, 2004.

Respondents' Motion to Sever and Require Separate Arbitrations of Claims filed on or
about: September 20, 2004.
Claimants' Opposition to Respondents' Motion to Sever filed on or about:  September
27, 2004.
Respondents' Reply to Claimants' Opposition to Motion to Sever filed on or about:
September 29, 2004.

Respondents' Motion to Strike Certain of Claimants' Damages Claims filed on or about:
November 26, 2004.
Claimants' Response to Respondents' Motion to Strike Certain of Claimants' Damages
Claims filed on or about: December 20, 2004.

Claimants' Motion to Exclude Events Subsequent to the Transfer of Claimants'
Accounts from Respondents filed on or about: January 14, 2005.
Respondents' Response to Motion to Exclude Events Subsequent to the Transfer of
Claimants' Accounts from Respondents filed on or about: January 19, 2005.
Claimants' Reply to Respondents' Response to Motion to Exclude Events Subsequent
to the Transfer of Claimants' Accounts from Respondents filed on or about: January 19,
2005.

Claimants' Motion to Add Glenn Gobert as a Claimant filed on or about: March 2, 2005.
Respondents' Opposition to Claimants' Motion to Add Glenn Gobert as a Claimant filed
on or about: March 8, 2005.

Claimants' Motion to Substitute Legal Successor for Deceased Party (Sharon Perque)
filed on or about: April 20, 2005.

Claimants' Motion to Substitute Legal Successors for Deceased Party (Robert Devall)
filed on or about: May 11, 2006.

## CASE SUMMARY

Claimants asserted the following causes of action: 1) unsuitability; 2) breach of contract;
3) breach of fiduciary duty; 4) misrepresentation; 5) violation of Louisiana Blue Sky
Laws, LA. REV. STAT. §§ 51:712(A) and 51:512 (D); 6) violation of NASD Rules 2110,
2210, 2310, 2510 and 3010; 7) unauthorized trading; 8) failure to maintain proper
records; 9) failure to provide prospectuses; and, 10) failure to supervise.  The causes of
action relate to unspecified variable annuity and mutual fund purchases in Claimants'
retirement accounts.

Unless specifically admitted in their Answers, Respondents denied the allegations made in the
Statement of Claim, as amended, and asserted various affirmative defenses.

NASD Dispute Resolution
Arbitration No. 03-05687
Award  Page 5

## RELIEF REQUESTED

Claimants requested: 1) rescission; 2) compensatory damages in an aggregate amount of $22,273,823.81; 3) reasonable attorneys' fees; 4) costs; 5) pre- and post-judgment interest; 6) punitive damages; 7) disgorgement of commissions; and 8) all other relief to which they are entitled.

Respondents requested: 1) dismissal of Claimants' claims, as amended, with prejudice; 2) costs of these proceedings; 3) interest; and, 4) any other relief allowed by any applicable law.

## OTHER ISSUES CONSIDERED AND DECIDED

On or about March 8, 2004, the undersigned arbitrators (the "Panel") entered an order which granted *Claimants' Consent* Motion to Amend the Third Amended Statement of Claim.

On or about August 17, 2004, the Panel entered an order which granted Claimants' Consent Motion to Amend the Fourth Amended Statement of Claim.

On or about October 4, 2004, the Panel entered an order which denied Respondents' Motion to Sever and Require Separate Arbitration of Claims.

On or about October 7, 2004, the Panel entered an order which granted Respondents' Motion for Order of Substitution.  Accordingly, Sharon Bennett was substituted for Richard Bennett (deceased) as a party in this matter.

On or about April 29, 2005, the Panel entered an order which granted Claimants' Motion to Substitute Legal Successor for Sharon Perque. Accordingly, Russell and Palmer Perque were substituted for Sharon Perque (deceased) as parties in this matter.

On or about January 18, 2006, Claimants Russell and Palmer Perque in their capacity as the legal survivors of Sharon Perque dismissed, with prejudice, their claims against Respondents.

On or about May 11, 2006, the Panel entered an order which granted Claimants' Motion to Substitute Legal Successors for Robert Devall. Accordingly, Judy, Andrea and Karrie Devall were substituted for Robert Devall (deceased) as parties in this matter.

During the evidentiary hearing, the Panel denied Respondents' Motion to Strike Certain of Claimants' Damages Claims, Claimants' Motion to Exclude Events Subsequent to the Transfer of Claimants' Accounts from Respondents, and Claimants' Motion to Add Glenn Gobert as a Claimant.

The parties have agreed that the Award in this matter may be executed in counterpart copies.

NASD Dispute Resolution
Arbitration No. 03-05687
Award  Page 6

## AWARD

After considering the pleadings and the testimony and evidence presented at the hearing, the Panel has decided in full and final resolution of the issues submitted for determination as follows:

(1) There shall be judgment in favor of each Claimant, and against the Respondents, David McFadden and Securities America, Inc., jointly and in solido, in the following amounts:

| | |
|---|---|
| Wayland Adams | $629,740.32 |
| Teleson Babin and Mary Babin, both individually and in their capacity as trustees of the Babin Family Trust | $802,102.35 |
| Willie and Laverne Baker | $170,654.02 |
| Willard Beard | $606,346.89 |
| Sharon Bennett individually and in her capacity as the legal survivor of Richard Bennett | $423,026.08 |
| Eddie Carroll | $436,453.61 |
| Audrey Crochet | $174,678.33 |
| Jody Devall and Jody, Andrea and Karrie Devall in their capacity as the legal survivors of Robert Devall | $ 86,623.29 |
| James Duty | $361,039.32 |
| Kirby Duty | $514,900.10 |
| George Franklin | $414,263.25 |
| Louis Gauthier, Jr. | $159,284.23 |
| Arthur and Jacqueline Lambert | $355,612.57 |
| Charles O. and Connie Miller | $261,536.13 |
| Charles T. Miller | $274,589.31 |
| George Ashley Moore | $476,889.74 |
| George Allen Moore and Elaine Moore | $478,653.61 |
| Russell Normand | $484,575.35 |
| Charles Norton and Candace Norton | $214,119.36 |
| Robert Parent | $402,137.84 |
| Glenn Parrott | $226,104.17 |
| Allen Pourciau | $274,620.78 |
| Warren Richard | $192,741.92 |
| Ronald Richardson | $362,245.70 |
| Pat Salatich | $422,550.13 |
| Bradley Simon | $339,996.25 |
| Carl Smith | $289,575.99 |
| Andrew Spinks | $411,902.56 |
| M.J. Stallings | $ 84,733.83 |
| Cheryl Taylor | $249,337.50 |
| Lionel Theriot | $579,075.31 |
| Richard White and Dona White | $175,988.41 |

NASD Dispute Resolution
Arbitration No. 03-05687
<u>Award  Page 7</u>

In addition, the Respondents shall pay the Louisiana statutory rate of interest on the respective amounts set forth above, to each of the Claimants, from the date of his or her filing a Statement of Claim in this arbitration until paid.

(2) In addition, there shall be judgment in favor of each Claimant, and against the Respondents, jointly and <u>in solido</u>, for attorneys fees, equal to forty percent (40%) of the judgment in favor of each Claimant set forth in paragraph 1 above, with interest at the Louisiana statutory rate thereon from the date of this award until paid. The attorneys' fees are awarded pursuant to the Louisiana Blue Sky Law (La.R.S. 51:714(A)) and La. Civil Code art. 1958.

(3) In addition, there shall be judgment in favor of each Claimant and against the Respondents, jointly and <u>in solido</u>, for costs of $453,924.62.

(4) In addition, there shall be judgment in favor of each Claimant and against the Respondents, jointly and <u>in solido</u>, for punitive damages in the following amounts:

| | |
|---|---|
| Wayland Adams | $189,418.60 |
| Teleson Babin and Mary Bebin, both individually and in their capacity as trustees of the Babin Family Trust | $241,263.05 |
| Willie and Laverne Baker | $ 51,330.65 |
| Willard Beard | $182,381.85 |
| Sharon Bennett individually and in her capacity as the legal survivor of Richard Bennett | $127,241.80 |
| Eddie Carroll | $131,280.10 |
| Audry Crochet | $ 52,540.95 |
| Jody Devall and Jody, Andrea and Karrie Devall in their capacity as the legal survivors of Robert Devall | $ 26,055.05 |
| James Duty | $108,596.25 |
| Kirby Duty | $154,876.05 |
| George Franklin | $124,605.60 |
| Louis Gauthier, Jr. | $ 47,910.80 |
| Arthur and Jacqueline Lambert | $106,963.85 |
| Charles O. and Connie Miller | $ 78,667.05 |
| Charles T. Miller | $ 82,593.35 |
| George Ashley Moore | $143,442.60 |
| George Allen Moore and Elaine Moore | $143,973.20 |
| Russell Normand | $145,754.70 |
| Charles Norton and Candace Norton | $ 64,404.55 |
| Robert Parent | $120,958.25 |
| Glenn Parrott | $ 68,009.55 |
| Allen Pourciau | $ 82,602.45 |
| Warren Richard | $ 57,974.35 |
| Ronald Richardson | $108,959.20 |
| Pat Salatich | $127,098.30 |
| Bradley Simon | $102,266.85 |
| Carl Smith | $ 87,100.65 |
| Andrew Spinks | $123,895.45 |

NASD Dispute Resolution
Arbitration No. 03-05687
Award Page 8

| | |
|---|---|
| M.J. Stallings | $ 25,486.65 |
| Cheryl Taylor | $ 74,997.65 |
| Lionel Theriot | $174,178.90 |
| Richard White and Dona White | $143,171.70 |

In addition, the Respondents shall pay the Louisiana statutory rate of interest on the respective amounts set forth above, to each of the Claimants, from the date of this Award until paid. Punitive damages are awarded pursuant to: Ehrich v. A.G. Edwards & Sons, Inc., 675 F. Supp. 559 (D.S.D. 1987); Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 59; Securities Arbitration Procedure Manual, Sec. 14-6; and, The Arbitrator's Manual.

Any and all requests for relief not specifically addressed herein are denied.

## FEES

Pursuant to the NASD Code of Arbitration Procedure (the "Code"), the following fees are assessed:

### Filing Fees
NASD Dispute Resolution will retain or collect the non-refundable filing fees for each claim:

| | |
|---|---|
| Initial claim filing fee | = $    600.00 |

### Member Fees
Member fees are assessed to each member firm that is a party in these proceedings or to the member firm(s) that employed the associated person(s) at the time of the event(s) giving rise to the dispute. Accordingly, SAI is a party and a member firm.

| | |
|---|---|
| Member surcharge | = $ 3,750.00 |
| Pre-hearing process fee | = $   750.00 |
| Hearing process fee | = $ 5,500.00 |
| Total Member Fees | = $10,000.00 |

### Adjournment Fees
Adjournments granted during these proceedings for which fees were assessed:

There were no adjournment fees assessed during these proceedings.

### Three-Day Cancellation Fees
Fees apply when a hearing on the merits is postponed or settled within three business days before the start of a scheduled hearing session:

There were no three-day cancellation fees assessed during these proceedings.

### Injunctive Relief Fees
Injunctive relief fees are assessed to each member or associated person who files for a temporary injunction in court. Parties in these cases are also assessed arbitrator travel expenses and costs when an arbitrator is required to travel outside his or her hearing location and additional arbitrator honoraria for the hearing for permanent injunction.

NASD Dispute Resolution
Arbitration No. 03-05687
<u>Award  Page 9</u>

These fees, except the injunctive relief surcharge, are assessed equally against each party unless otherwise directed by the Panel.

*There were no injunctive relief fees assessed during these proceedings.*

## Forum Fees and Assessments

The Panel has assessed forum fees for each session conducted. A session is any meeting between the parties and the arbitrator(s), including a pre-hearing conference with the arbitrator(s), that lasts four (4) hours or less. Fees associated with these proceedings are:

| | | | |
|---|---|---|---|
| One (1) Pre-hearing session with a single arbitrator @ $450.00/session | | | = $ 450.00 |
| Pre-hearing conference: | April 27, 2005 | 1 session | |

| | | | |
|---|---|---|---|
| Eight (8) Pre-hearing sessions with the Panel @ $1,200.00/session | | | = $9,600.00 |
| Pre-hearing conferences: | March 19, 2004 | 1 session | |
| | August 26, 2004 | 1 session | |
| | September 30, 2004 | 1 session | |
| | November 12, 2004 | 1 session | |
| | November 15, 2004 | 1 session | |
| | March 9, 2005 | 1 session | |
| | October 6, 2005 | 1 session | |
| | March 1, 2006 | 1 session | |

| | | | |
|---|---|---|---|
| One Hundred Seventy-Seven (177) Hearing sessions @ $1,200.00 | | | = $212,400.00 |
| Hearing dates: | November 29, 2004 | 2 sessions | |
| | November 30, 2004 | 2 sessions | |
| | December 1, 2004 | 2 sessions | |
| | December 2, 2004 | 2 sessions | |
| | December 3, 2004 | 2 sessions | |
| | December 13, 2004 | 2 sessions | |
| | December 14, 2004 | 2 sessions | |
| | December 20, 2004 | 2 sessions | |
| | December 21, 2004 | 2 sessions | |
| | December 22, 2004 | 2 sessions | |
| | January 3, 2005 | 2 sessions | |
| | January 4, 2005 | 2 sessions | |
| | January 5, 2005 | 2 sessions | |
| | January 6, 2005 | 2 sessions | |
| | January 7, 2005 | 2 sessions | |
| | January 10, 2005 | 2 sessions | |
| | January 24, 2005 | 2 sessions | |
| | January 25, 2005 | 2 sessions | |
| | January 26, 2005 | 2 sessions | |
| | January 27, 2005 | 2 sessions | |
| | January 28, 2005 | 2 sessions | |
| | January 31, 2005 | 2 sessions | |
| | February 1, 2005 | 2 sessions | |
| | February 2, 2005 | 2 sessions | |

NASD Dispute Resolution
Arbitration No. 03-05687
Award  Page 10

| | |
|---|---|
| February 3, 2005 | 2 sessions |
| February 4, 2005 | 2 sessions |
| February 17, 2005 | 2 sessions |
| February 18, 2005 | 2 sessions |
| February 21, 2005 | 2 sessions |
| February 22, 2005 | 2 sessions |
| February 23, 2005 | 2 sessions |
| February 24, 2005 | 2 sessions |
| February 25, 2005 | 2 sessions |
| March 16, 2005 | 2 sessions |
| March 17, 2005 | 2 sessions |
| March 18, 2005 | 2 sessions |
| May 2, 2005 | 2 sessions |
| May 3, 2005 | 2 sessions |
| May 4, 2005 | 2 sessions |
| May 5, 2005 | 2 sessions |
| May 6, 2005 | 2 sessions |
| June 6, 2005 | 1 session |
| June 7, 2005 | 3 sessions |
| June 8, 2005 | 2 sessions |
| June 9, 2005 | 2 sessions |
| June 10, 2005 | 2 sessions |
| June 28, 2005 | 2 sessions |
| June 30, 2005 | 2 sessions |
| July 12, 2005 | 3 sessions |
| July 13, 2005 | 2 sessions |
| August 2, 2005 | 2 sessions |
| August 3, 2005 | 2 sessions |
| August 4, 2005 | 2 sessions |
| August 5, 2005 | 2 sessions |
| August 8, 2005 | 2 sessions |
| August 9, 2005 | 2 sessions |
| August 10, 2005 | 2 sessions |
| August 11, 2005 | 2 sessions |
| August 12, 2005 | 1 session |
| August 18, 2005 | 2 sessions |
| August 19, 2005 | 2 sessions |
| October 27, 2005 | 2 sessions |
| October 28, 2005 | 2 sessions |
| November 10, 2005 | 2 sessions |
| November 11, 2005 | 2 sessions |
| November 21, 2005 | 2 sessions |
| November 22, 2005 | 2 sessions |
| November 23, 2005 | 2 sessions |
| January 3, 2006 | 2 sessions |
| January 4, 2006 | 2 sessions |
| January 5, 2006 | 2 sessions |
| January 6, 2006 | 2 sessions |
| January 23, 2006 | 2 sessions |

NASD Dispute Resolution
Arbitration No. 03-05687
<u>Award   Page 11</u>

| | |
|---|---|
| January 24, 2006 | 2 sessions |
| February 1, 2006 | 2 sessions |
| February 2, 2006 | 2 sessions |
| February 3, 2006 | 2 sessions |
| February 8, 2006 | 2 sessions |
| February 9, 2006 | 3 sessions |
| February 10, 2006 | 3 sessions |
| March 13, 2006 | 1 session |
| March 14, 2006 | 2 sessions |
| March 15, 2006 | 2 sessions |
| March 16, 2006 | 3 sessions |
| March 17, 2006 | 2 sessions |
| March 23, 2006 | 2 sessions |
| April 13, 2006 | 3 sessions |

Total Forum Fees                                      = $222,450.00

The Panel has assessed the total forum fees of $222,450.00 to Respondents, jointly and severally.

**Administrative Costs**
Administrative costs are expenses incurred due to a request by a party for special services beyond the normal administrative services. These include, but are not limited to, additional copies of arbitrator awards, copies of audio transcripts, retrieval of documents from archives, interpreters, and security.

There were no administrative costs incurred during these proceedings.

**Fee Summary**

Claimants are jointly and severally liable for:

| | | |
|---|---|---|
| Initial Filing Fee | = $ | 600.00 |
| Total Fees | = $ | 600.00 |
| Less Payments | = $ | 600.00 |
| Balance Due NASD Dispute Resolution | = $ | 0.00 |

Respondent SAI is solely liable for:

| | | |
|---|---|---|
| Member Fees | – $ | 10,000.00 |
| Total Fees | = $ | 10,000.00 |
| Less payments | = $ | 10,000.00 |
| Balance Due NASD Dispute Resolution | = $ | 0.00 |

Respondents are jointly and severally liable for:

| | |
|---|---|
| Forum Fees | = $222,450.00 |
| Total Fees | = $222,450.00 |
| Less payments | = $  0.00 |
| Balance Due NASD Dispute Resolution | = $222,450.00 |

All balances are payable to NASD Dispute Resolution and are due upon receipt pursuant to Rule 10330(g) of the Code.

NASD Dispute Resolution
Arbitration No. 03-05687
Award  Page 12

## ARBITRATION PANEL

C. Ellis Henican, Jr., Esq.    Public Arbitrator, Presiding Chairperson
Leonard J. Sullivan, Esq.     Public Arbitrator
Michael F. Brown, Esq.      Non-Public Arbitrator

### Concurring Arbitrators' Signatures

_____/s/_____
C. Ellis Henican, Jr., Esq.                   _____
Public Arbitrator, Presiding Chairperson    Signature Date

_____/s/_____
Leonard J. Sullivan, Esq.                 _____
Public Arbitrator                        Signature Date

_____/s/_____
Michael F. Brown, Esq.                  _____
Non-Public Arbitrator                    Signature Date

May 15, 2006 _____
Date of Service  (For NASD Dispute Resolution office use only)

NASD Dispute Resolution
Arbitration No. 03-05687
Award  Page 12

## ARBITRATION PANEL

C. Ellis Henican, Jr., Esq.  Public Arbitrator, Presiding Chairperson
Leonard J. Sullivan, Esq.  Public Arbitrator
Michael F. Brown, Esq.  Non-Public Arbitrator

### Concurring Arbitrators' Signatures

_C. Ellis Henican, Jr._

C. Ellis Henican, Jr., Esq.
Public Arbitrator, Presiding Chairperson

_May 15, 2006_
Signature Date

Leonard J. Sullivan, Esq.
Public Arbitrator

Signature Date

Michael F. Brown, Esq.
Non-Public Arbitrator

Signature Date

Date of Service  (For NASD Dispute Resolution office use only)

NASD Dispute Resolution
Arbitration No. 03-05687
Award  Page 12

## ARBITRATION PANEL

C. Ellis Henican, Jr., Esq.          Public Arbitrator, Presiding Chairperson
Leonard J. Sullivan, Esq.            Public Arbitrator
Michael F. Brown, Esq.               Non-Public Arbitrator

### Concurring Arbitrators' Signatures

_____          _____
C. Ellis Henican, Jr., Esq.          Signature Date
Public Arbitrator, Presiding Chairperson

_Leonard J. Sullivan_                    5/12/06
_____          _____
Leonard J. Sullivan, Esq.            Signature Date
Public Arbitrator

_____          _____
Michael F. Brown, Esq.               Signature Date
Non-Public Arbitrator


_____
Date of Service  (For NASD Dispute Resolution office use only)

## ARBITRATION PANEL

C. Ellis Henican, Jr., Esq.          Public Arbitrator, Presiding Chairperson
Leonard J. Sullivan, Esq.            Public Arbitrator
Michael F. Brown, Esq.               Non-Public Arbitrator

### Concurring Arbitrators' Signatures

_____                    _____
C. Ellis Henican, Jr., Esq.                         Signature Date
Public Arbitrator, Presiding Chairperson

_____                    _____
Leonard J. Sullivan, Esq.                           Signature Date
Public Arbitrator

*Michael F. Brown*                                  *May 11, 2006*
_____                    _____
Michael F. Brown, Esq.                              Signature Date
Non-Public Arbitrator

_____
Date of Service  (For NASD Dispute Resolution office use only)