September 12, 2006

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| WAYLAND ADAMS, ET AL. | CIVIL ACTION |
| VERSUS | NO. 06-2509 c/w 06-3042 |
| SECURITIES AMERICA, INC. | SECTION "A"(2) |

**ORDER AND REASONS**

Before the Court is a **Motion to Confirm Arbitration Award (Rec. Doc. 10)** filed by Plaintiffs in the master case, and a **Motion to Vacate or Modify Arbitration Award (Rec. Doc. 45 and Rec. Doc. 1 in case 06-3042)**, filed by Securities America, Inc. and David McFadden. Both motions are opposed. The motions, set for hearing on August 23, 2006, are before the Court on the briefs without oral argument. For the following reasons the **Motion to Confirm Arbitration Award (Rec. Doc. 10)** is **GRANTED**. The **Motion to Vacate or Modify Arbitration Award (Rec. Doc. 45 and Rec. Doc. 1 in case 06-3042)** is **DENIED**.

**I. BACKGROUND**

The Plaintiffs in the master case are retired plant workers who invested their retirement savings with Securities America, Inc. ("Securities America"). David McFadden was the

representative who serviced Plaintiffs' Securities America accounts. The Plaintiffs filed suit in state court based on allegations that they lost the majority of their life savings due to the blatant self-dealing of Securities America and Mr. McFadden. Securities America demanded that they pursue their claims in arbitration as required by the Securities America customer agreement.

The Plaintiffs filed a Statement of Claim with the NASD-DR in July of 2003. The panel issued an award in favor of the Plaintiffs on May 15, 2006. The arbitration spanned approximately three years, and it involved ninety hearing days. The arbitration panel consisted of C. Ellis Henican, Jr., and Leonard J. Sullivan, who were the "public" arbitrators, and Michael F. Brown, the "industry" arbitrator. Mr. Brown replaced Richard Upton after Mr. Upton withdrew from the panel. The award includes $11,635,850 in compensatory damages, $4,654,374 in attorney's fees, $453,924.62 in costs, and approximately $3.5 million in punitive damages. With interest, the award totals approximately $22 million. The award included separate amounts for each plaintiff ranging from $144,112 to $1,364,205.

Plaintiffs filed this action against Securities America seeking to confirm the award. Securities America and Mr. McFadden filed a separate action, which has been consolidated with the Plaintiffs' action, seeking to vacate the award.

**II. <u>DISCUSSION</u>**

Securities America and McFadden argue that the award should be vacated or modified for the following reasons: (1) "the award's assessment of punitive damages was in manifest disregard of the law and public policy"; (2) "the award's attorneys' fees were grossly excessive and in manifest disregard of the law and public policy"; (3) "one of the appointed arbitrators

failed to make required disclosures of material information that constituted an appearance of bias and therefore evident partiality in violation of Securities America's and McFadden's right to due process"; and (4) "the conduct of one of the arbitrators demonstrated evident partiality in violation of Security America's and McFadden's right to due process." (Securities America and McFadden's Memo In Support of Motion to Vacate or Modify, p. 2).

***(1) Punitive Damages***

Securities America and McFadden argue that the punitive damage award must be vacated because the arbitrators manifestly disregarded the law by awarding punitive damages. They argue that Louisiana has a strong and well developed public policy that absent specific statutory grounds punitive damages are not recoverable. They contend that none of the statutory bases for punitive damages were present in the arbitration. Securities America and McFadden contend that the panel imposed punitive damages for violations of the Louisiana Blue Sky law or general tort theories, even though Louisiana law forbids such an award.

Further, Securities America and McFadden contend that the award should be vacated because the panel failed to assess punitive damages on an individual basis as mandated by several United States Supreme Court cases. They argue that despite being aware of the applicable standards, the panel awarded punitive damages to every plaintiff in an amount equal to 30.079 % of each plaintiff's compensatory damage award. They assert that the arbitrators made no effort to apply the factors established by the Supreme Court for making an individualized assessment and violated their constitutional rights by failing to do so.

In opposition, Plaintiffs contend that their entitlement to punitive damages was never

based on Louisiana law, but was always based on the inherent powers conferred on the panel in the arbitration agreement and the NASD rules. Plaintiffs point out that the arbitration agreement in this case required arbitration under the NASD rules. Plaintiffs argue that *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995), allows arbitrators to award punitive damages under the NASD rules as well as any damages authorized by the parties' agreement to arbitrate, even if those damages would not be allowed under state substantive law.

Plaintiffs argue that even if Securities America and McFadden could establish that the award was contrary to law, their manifest disregard claim still fails because they cannot show that the arbitrators knew the award was contrary to law, and made the conscious decision to disregard that law. They contend that they cited ample authority to the panel for the propriety of a punitive damages award, and Securities America never attempted to directly refute the *Mastrobuono* line of cases supporting the panel's inherent power to make such an award.

Plaintiffs also contend that the punitive damage awards were in fact made individually. They argue that although each plaintiff was awarded approximately 30 percent of his or her individual compensatory award, there is nothing alarming about calculating each plaintiff's award this way given the common facts. They argue that each of the individuals was a victim of the same fraudulent scheme, and the gravity of the harm varied in proportion to the magnitude of the financial losses suffered. Plaintiffs suggest that, "given the egregious self-dealing at issue here, and the lengths to which Securities America went to defend what is truly indefensible," the award does not create substantial injustice or offend societal norms, but rather reflects considerable restraint on the panel's part.

A district court's review of an arbitration award "is extraordinarily narrow." *Prestige Ford v. Ford Dealer Computer Services, Inc.*, 324 F.3d 391, 393 (5th Cir. 2003). Indeed, because courts "must remain exceedingly deferential to arbitration," vacatur of an arbitration award is permitted "only on very narrow grounds." *Brabham v. A.G. Edwards & Sons, Inc.*, 376 F.3d 377, 380, 385 (5th Cir. 2004). The Federal Arbitration Act ("FAA") sets forth the limited statutory grounds for vacating an award. 9 U.S.C. § 1, *et seq.* The Fifth Circuit has adopted the "manifest disregard of the law" standard as a non-statutory ground for vacating an arbitration award. *Prestige Ford*, 324 F.3d at 395 (citing *Williams v. Cigna Financial Advisors, Inc.*, 197 F.3d 752, 759 (5th Cir. 1999)). It has established a two-step test that a party asserting "manifest disregard" must meet to have an award vacated. *Sarofim v. Trust Company of the West*, 440 F.3d 213, 217 (5th Cir. 2006) (citing *Williams*, 197 F.3d at 762). "First, where on the basis of the information available to the court it is not manifest that the arbitrators acted contrary to the applicable law, the award should be upheld." *Id.* "Second, where on the basis of the information available to the court it is manifest that the arbitrators acted contrary to the applicable law, the award should be upheld unless it would result in significant injustice, taking into account all the circumstances of the case, including powers of arbitrators to judge norms appropriate to the relations between parties." *Id.*

The arbitration agreements at issue in this case required the parties to arbitrate pursuant to the arbitration rules of the New York Stock Exchange, Inc. or National Association of Securities Dealers, Inc. Plaintiffs further note that the parties signed a uniform submission agreement, stating that the claims would be arbitrated "in accordance with the Constitution, By-

Laws, Rules, Regulations and/or Code of Arbitration Procedure of the sponsoring organization." The parties arbitrated with the NASD-DR. The *Mastrobuono* Court noted that the NASD's Code of Arbitration Procedure, while not containing a clear authorization of punitive damages, had a damages provision which appeared broad enough to at least contemplate such a remedy. 514 U.S. at 59. Further, as Plaintiffs point out, other courts have noted that "[t]he NASD rules clearly allow for the award of punitive damages." *See, e.g., Roubik v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 674 N.E.2d 35 (Ill. App. Ct. 1996). Additionally, the NASD Manual provides: "Arbitrators may consider punitive damages as a remedy." Securities America and McFadden have not suggested that the parties' agreement contained any express reference to claims or exclusions for punitive damages. Based on the foregoing, this Court cannot conclude that the panel manifestly disregarded the law in awarding punitive damages in this case.

Securities America and McFadden also suggest that public policy supports vacatur of the punitive damages award. The Fifth Circuit "does recognize some circumstances in which a court may refuse to enforce an arbitration award that is contrary to public policy." *Prestige Ford*, 324 F.3d at 396. It has been recognized that the public policy exception is a narrow one. *Id.* (citing *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29 (1987)). "A court's refusal to enforce an award that is contrary to public policy is little more than 'a specific application of the more general doctrine, rooted in the common law, that a court may refuse to enforce contracts that violate law or public policy.'" *Misco*, 484 U.S. at 42. "[A]ny public policy used to vacate an arbitration award must be 'explicit,' 'well defined,' and '*dominant*.'" *Id.* (quoting *W.R. Grace & Co. v. Rubber Workers*, 461 U.S.757, 766 (1983) (emphasis added)). Securities

America and McFadden have not demonstrated that Louisiana's policy on punitive damages is grounds for vacatur of the award in light of the narrow public policy exception. Most importantly, they have not demonstrated that Louisiana's policy is "dominant" notwithstanding that the parties agreed to arbitrate according to the NASD rules, which permits the award of punitive damages.

Further, the Court finds no merit in Securities America and McFadden's contention that the panel failed to assess punitive damages on an individual basis. In the award, the panel listed a separate amount of punitive damages to be paid to each individual Plaintiff. (See Pla. Memo in Support of Motion to Confirm, Exh. 3, Award). The panel did not state its reasons for the amount of punitive damages it awarded to each Plaintiff. However, "'[a]rbitrators need not give reasons for their awards . . . . Uncertainty about arbitrators' reasoning cannot justify vacatur, for a court must resolve all doubts in favor of arbitration.'" *Brabham* , 376 F.3d at 385; *Sarofim*, 440 F.3d at 218.

While each Plaintiff was awarded punitive damages in the amount of approximately 30 percent of his or her individual compensatory award, this does not demonstrate that the arbitrators manifestly disregarded the law. The plaintiffs in this case, former plant workers, had similar grievances against Securities America and McFadden. Securities America and McFadden have not demonstrated that "clearly applicable law . . . dictates a contrary result" from that reached by the panel. *Brabham*, 376 F.3d at 385.

Finally, even if the Court were to find that the panel manifestly disregarded the law in awarding punitive damages, Securities America and McFadden would still have to demonstrate

that the award "would result in significant injustice, taking into account all the circumstances of the case, including powers of arbitrators to judge norms appropriate to the relations between parties." *Sarofim*, 440 F.3d at 217 (citing *Williams*, 197 F.3d at 762). Securities America and McFadden have not established how this requirement has been met.

For the foregoing reasons, the Court finds no basis for vacating the panel's award of punitive damages.

***(2) Attorney's Fees***

Securities America and McFadden challenge the arbitration panel's award of attorney's fees as excessive and in manifest disregard of the law. Securities America and McFadden appear to recognize the arbitrators' purported basis for legal entitlement to the award under the Louisiana Blue Sky Law, La. R.S. 51:714(A), and La Civ. Code Art. 1958. However, they go on to assert that once it appears an attorney fee award is statutorily authorized, a court must inquire into the reasonableness of the attorneys' fees. Securities America and McFadden argue that the fees awarded are triple the "normal" hourly rate in the state of Louisiana and three times the amount requested by Plaintiffs. Therefore, they argue the attorney fees are clearly excessive and represent a "manifest disregard" of the law by the arbitrators.

In opposition, Plaintiffs argue the panel's award was sensible and factually appropriate given the contingency fee contract in place. They contend that under either the contractual fee approach or the lodestar approach, the panel's award is well-supported. Plaintiffs assert that the award is legally permissible under both the Louisiana Blue Sky Law and Louisiana contract fraud theory. Plaintiffs also contend that the reasonableness of the attorney's fee award is a

factual issue not a legal issue and therefore not properly subject to the "manifest disregard of the law" analysis.

Alternatively, even if the reasonableness of the attorney's fee award is a legal issue, and subjected to either the contingency fee approach or the lodestar approach, Plaintiffs contend the fees awarded are reasonable. They point to the numerous years and thousands of hours expended on this case which required 90 hearing days, the multiple expert witnesses, and hundreds of thousands of dollars in up-front out of pocket expenses. Plaintiffs argue that Defendants' continued references to normal hourly rates ignores the fact that this suit was litigated through a contingency fee contract arrangement.

This Court must evaluate the arbitrators' decision in awarding attorney's fees under a "manifest disregard of the law" standard. *Prestige Ford*, 324 F.3d at 395 (citing *Williams v. Cigna Financial Advisors, Inc.*, 197 F.3d 752, 759 (5th Cir. 1999)). In determining whether the arbitrators' award of attorney's fees in this case was in manifest disregard of the law, this Court refers to the Fifth Circuit Court of Appeals holding in *Prestige Ford v. Ford Dealer Computer Services*, namely, that a district court's review of an arbitration award is "extraordinarily narrow." 324 F.3d 391, 393 (5th Cir. 2003). Recently, the Fifth Circuit has refined the applicable "manifest disregard" standard, as noted above, adding strong language such as "manifest" and "significant injustice" to reinforce the notion that district courts exercise restraint when considering vacatur of an arbitration award. *Sarofim v. Trust Company of the West*, 440 F.3d 213, 217 (5th Cir. 2006) (citing *Williams*, 197 F.3d at 762).

In the instant case, this Court finds that the arbitrators did not exhibit a "manifest

disregard of the law" in the amount of attorney's fees awarded because the fee award is reasonable. It is unclear from the record whether the arbitrators used the contingency fee approach or the lodestar approach when assessing the attorney's fees. Nevertheless, there is significant overlap between the factors underlying both methods. The record shows that Plaintiffs submitted a two page affidavit to the panel with a request for a lodestar multiplier. The record also shows the case lasted approximately three years, involved 90 days of hearings, and multiple attorneys performing thousands of hours of work. In addition, there was a contingency fee agreement with plaintiffs in the amount of 40% of the award. Based on the foregoing factors, the attorney's fee award is reasonable and not in manifest disregard of the law.

***(3) Failure to Make Required Disclosures***

Securities America and McFadden argue that arbitrator Michael Brown failed to make required disclosures, providing grounds for vacatur. Specifically, Securities America and McFadden argue that Brown failed to make required disclosures about his expert witness work for claimants in other cases, some of which involved issues similar to those raised in the instant matter, and some of which took place during the same time period as the arbitration in the instant matter.[1]

[1] Securities America and McFadden raise many of the same arguments that they have previously raised in their memorandum in support of their application for leave to conduct limited discovery (Rec. Doc. 20), their supplemental memorandum and exhibits in support of their application for leave to conduct limited discovery (Rec. Doc. 25), and their reply brief in support of their application for leave to conduct limited discovery (Rec. Doc. 31). After considering the extensive briefing of the parties and the applicable law, the Court denied Securities America and McFadden's request for discovery regarding their allegation of failure to disclose and bias on the part of Mr. Brown. ( Rec. Doc. 37).

The Court has previously ruled that such allegations are insufficient to establish even a *prima facie* case that the award should be vacated. (Rec. Doc. 37). The Court will not repeat its reasoning. However, it will reiterate that Securities America and McFadden have not made any allegations that Brown has or had a relationship with anyone involved in this litigation. Moreover, as the non-public or industry arbitrator, Brown was required to have worked in the industry and have knowledge about the brokerage business.

Securities America and McFadden contend that evident partiality is proven by the failure to disclose facts that might create a reasonable impression of an arbitrator's partiality regardless of whether actual bias is established. They contend that Brown's alleged non-disclosure of his expert witness work at the outset thus constitutes evident partiality. However, the court in *University Commons-Urbana, Ltd.*, 304 F.3d 1331, 1339 (11th Cir. 2002), explained that the partiality alleged must be "direct, definite and capable of demonstration rather than remote, uncertain and speculative."

Further, while Brown may not have been as specific in disclosing his expert witness work as Securities America and McFadden would like, he did disclose during the arbitration that he had testified as an expert on behalf of other claimants in unrelated cases. The fact that this was not disclosed at the beginning of his appointment did not prevent Securities America and McFadden from making an objection when they did learn about the expert witness work. However, they chose not to do so, and now they ask this Court to discard an award reached after three years and ninety hearing days. A party "cannot stand by during arbitration, withholding certain arguments, then upon losing the arbitration, raise such arguments in federal court."

*Gateway Technologies, Inc. v. MCI Telecomm. Corp.*, 64 F.3d 993 (5th Cir. 1995).

Based on the foregoing, and for the reasons set forth in the Court's order regarding discovery (Rec. Doc. 37), the Court maintains its previous finding that Securities America and McFadden's contentions that Brown's failure to make required disclosures about his expert work do not present a *prima facie* case for vacatur.

***(4) Evident Partiality By the Arbitrators***

Securities America and McFadden argue that C. Ellis Henican, Jr. breached his duty to act as a *neutral* arbitrator under NASD-DR's established standards by making remarks and engaging in conduct that demonstrated bias, hostility and prejudice against Securities America and McFadden. They contend that strictly maintaining neutrality is mandatory for a panel chair such as Henican. They argue that his disregard of his duty of neutrality establishes his evident partiality, warranting vacatur of the award.

In opposition, Plaintiffs contend that a review of the 40,000 plus pages of transcript documenting the 90 hearing days which occurred in this case clearly demonstrates the overall evenhandedness, patience, and engagement of the arbitration panel, and of its chairman, Ellis Henican. They contend that the applicable case law demonstrates that it is to be expected that during the course of an arbitration hearing that an arbitrator may develop an opinion and perhaps express it. They argue that in a case involving 90 days of testimony, it would be highly unusual if a party could not scroll through the transcript for a few incidents that demonstrate frustration directed toward one party or the other during the course of the proceeding.

"Absent some sort of overt misconduct, a disappointed party's perception of rudeness on

the part of an arbitrator is not the sort of 'evident partiality' contemplated by the Act as grounds for vacating an award. . . . [I]t is not surprising that within the informal confines of an arbitration proceeding, an unsuccessful party eventually may perceive the demeanor of an arbitrator as less than satisfactory. Similarly, an arbitrator's legitimate efforts to move the proceedings along expeditiously may be viewed as abrasive or disruptive to a disappointed party. Nevertheless, such displeasure does not constitute grounds for vacating an arbitration award." *Fairchild & Co., Inc. v. Richmond, F. & P.R. Co.*, 516 F. Supp. 1305, 1313 (D.D.C. 1981).

The Fifth Circuit has noted that arbitration "is a speedy and informal alternative to litigation, and by its very nature, is intended to resolve disputes without confinement to many of the procedural and evidentiary strictures that protect the integrity of formal trials." *Prestige Ford*, 324 F.3d at 394. "Submission of disputes to arbitration always risks an accumulation of procedural and evidentiary shortcuts that would properly frustrate counsel in a formal trial; but because the advantages of arbitration are speed and informality, the arbitrator should be expected to act affirmatively to simplify and expedite the proceedings before him." *Id.*

Securities America and McFadden contend Henican told McFadden that he did not believe his testimony, in contravention of the requirement in the Arbitrator's Manual that care should be exercised, particularly when questioning a witness, so that the arbitrator does not indicate disbelief. They contend that Plaintiffs' counsel objected to an answer McFadden gave on direct examination on the ground that the answer was general, and instead of ruling on the objection, Henican made comments indicating his views about the accuracy of McFadden's testimony and/or recollection. Securities American and McFadden suggest that Henican's

statements demonstrated partiality and pre-judgment of the case, contending that McFadden had just begun testifying. Securities America and McFadden also contend that Henican repeatedly interrupted the testimony of Securities America and McFadden's witnesses to summarily argue points or challenge their testimony without waiting for cross-examination.

Securities America and McFadden contend that Henican repeatedly blamed Securities America and McFadden for the length and duration of the hearing through comments such as "the problem is always with the Defendants getting their witnesses on time or interviewing their witnesses or they want more time for vacations and all of that. And I feel concerned about that. That concerns me." (Securities America and McFadden's Memo in Support of Motion to Vacate, p. 24 (citing Exh. 13, Transcript). They contend that Henican badgered counsel and blamed them for being involved in other trials or matters that required attention, and he expressed impatience and hostility with the witnesses that they chose in light of the condensed time frame they were forced to follow. They contend that changes were made to the hearing schedule to accommodate the arbitrators' vacation schedules, conflicts with other ongoing arbitration proceedings, the availability of Plaintiffs, and illnesses by other parties.[2]

Plaintiffs respond that Henican's comments occurred on the seventh day of McFadden's testimony, and day 60 of the proceedings overall. They contend that by this time in the trial, McFadden had repeatedly offered extremely implausible testimony about how he never made trades without first obtaining the customer's approval and about other conversations and events

[2] Securities American and McFadden argued at length about numerous other instances that they claim demonstrate bias by Henican. Those contentions are too numerous to recite here and the Court does not find them persuasive.

that he purportedly remembered that were not referenced in the voluminous documents, or were directly contradicted by them. Plaintiffs argue that by day 60, it was clear that McFadden had routinely made trades in the Plaintiffs' accounts without first checking with them. Plaintiffs contend that before the comments were made, McFadden spent much of the morning continuing to deny his alleged misconduct and supporting his testimony with his recollection of specific conversations he had had years earlier, but which he failed to document in any way.

This Court finds that Henican's comments do not constitute "evident partiality" and thus do not provide a basis to vacate the award, especially considering the comments in the contexts in which they were made. Henican's comments regarding the witnesses reflect an attempt "to act affirmatively to simplify and expedite the proceedings before him." *Id.* Further, his comments regarding Defendants' scheduling cannot be said to constitute bias sufficient to vacate the award. Plaintiffs cited various portions of the transcript which demonstrated that Securities America and McFadden and/or their counsel had numerous scheduling problems. Neither does Securities America and McFadden's contention that Henican allowed Plaintiffs' counsel to ask questions repeatedly about a judgment involving punitive damages against McFadden even though the judgment was almost 20 years old, had been obtained in violation of a bankruptcy and had been discharged, provide a basis for vacatur. Notably, it is far from clear any such questions were asked "repeatedly." Securities America and McFadden cite *one* page of the transcript in support of their contention. Moreover, even if they would have cited more than one page they have not explained how allowing such questioning qualifies as "evident partiality" sufficient to vacate the award.

Further, "[a]n arbitrator is not precluded from developing views regarding the merits of a dispute early in the proceedings, and an award will not be vacated because he expresses those views." *Spector v. Torenberg*, 852 F. Supp. 201, 209 (S.D.N.Y. 1994) (citing *Ballantine Books, Inc. v. Capital Distributing Co.*, 302 F.2d 17, 21 (2d Cir. 1962). An arbitrator's "gratuitous remarks about the merits" do not indicate any bias. *United Ind. Workers v. Cov't. of V.I.*, 987 F.2d 162, 172 (3d Cir. 1993). Thus, Henican's comments regarding McFadden's testimony or the alleged financial situations of some of the Plaintiffs are insufficient to vacate the award.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion to Confirm Arbitration Award (Rec. Doc. 10)** should be and is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the **Motion to Vacate or Modify Arbitration Award (Rec. Doc. 45 and Rec. Doc. 1 in case 06-3042)** should be and is hereby **DENIED**.